## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **SHAUNTAE ROBERTSON,** | |
| **Plaintiff,** | |
| v. | **Case No. 25-cv-00172-SPM** |
| **LT. WALKER,**<br>**SGT. JONES,**<br>**C/O BAKER,**<br>**C/O HANCOCK,**<br>**HOLTGREFE,**<br>**TEAS,**<br>**YOUNG,**<br>**MORGAN,**<br>**JANE DOE,** *Nurse*,<br>**JOHN DOE 1,** *Correctional Officer*,<br>**JOHN DOE 2,** *Doctor,*<br>**JOHN DOE 3,** *Lieutenant***, and**<br>**ANTHONY WILLS,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Shauntae Robertson, an inmate in the custody of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. §1983 for alleged deprivations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

Page 1 of 15

## THE COMPLAINT

Plaintiff alleges that on August 6, 2024, while he was housed at Western Illinois Correctional Center (Western), he was involved in an assault against staff that resulted in the use of excessive force against him. (Doc. 1, p. 6, 21). During the incident, Plaintiff was injured. Later that same day, he was transferred from Western to Menard Correctional Center (Menard). (*Id.*). Upon his arrival at Menard, Nurse Morgan examined Plaintiff's injuries, a correctional officer conducted a mental health assessment, and another correctional officer took pictures of Plaintiff's injuries. (*Id.* at p. 6-7). Plaintiff states he had "head cuts and open wounds," and Nurse Morgan did not clean the wounds or give him any bandages or pain medication. (*Id.* at p. 7, 21).

Following the examination, John Doe 3, a lieutenant, told Plaintiff, "We have a special place just for you," and directed correctional officers to place Plaintiff in segregation cell 247. (Doc. 1, p. 7). Cell 247, located in North 2, was unsanitary. The cell was covered in "dried mace" and mold, and the toilet would malfunction and continuously flush for hours, which caused flooding. The cell smelled of feces and urine and was infested with bugs. (*Id.* at p. 7, 9). The mattress was dirty and small bugs crawled out of the mattress. (*Id.* at p. 8, 9). Plaintiff was unable to sleep because bugs would crawl on him. (*Id.* at p. 9). While in segregation, he was also denied recreation time outside, he was not able to launder his clothes, at times he was allowed to shower only once a week, and he was prohibited from shaving. (*Id.* at p. 9-10).

Plaintiff asked Correctional Officers Holtgrefe and Hancock for a new mattress, but Holtgrefe told Plaintiff that all the mattresses in North 2 "were the same." (Doc. 1, p. 8). After months of complaining and requesting a sanitary mattress, Holtgrefe and Hancock brought Plaintiff a different mattress. This mattress, however, was also infested with bugs, was stained, and had a bad smell. (*Id.*).

Plaintiff continued to ask for a clean mattress and to be moved to a sanitary cell from

Sergeant Jones, Correctional Officer Baker, Correctional Officer Holtgrefe, and Correctional Officer Hancock. (Doc. 1, p. 8). Baker told Plaintiff, "You not getting shit man. What did you do to Sergeant Jones[?]…He have it bad for you man, the only way you leaving this cell is if you kill yourself." (*Id.* at p. 8-9).

Plaintiff informed Counselor Teas about the conditions of his cell while she was doing her rounds of the cellhouse with Correctional Officer Baker. (Doc. 1, p. 10). Teas told Plaintiffs, "You have a staff assault I don't care write a grievance." Plaintiff also showed his cell conditions to Counselor Young who responded, "Oh…it looks real bad." (*Id.*).

On August 13, 2024, Plaintiff was seen by a doctor, John Doe 2, for his injuries sustained during the staff assault incident at Western. (Doc. 1, p. 11). He complained of pain in his chest, shoulder, ribs, back, neck, head, and ankles. Plaintiff also was suffering from impaired vision because he had been excessively sprayed with mace, and he has glaucoma. John Doe 2 ordered x-rays. Plaintiff states that John Doe 2 reported that the x-rays were "negative." John Doe 2 told Plaintiff that he had spoken to "staff at the prison and they told me if you come back here, I will leave to decompose you." (*Id.* at p. 11-12). Plaintiff was never given any pain medication. (*Id.* at p. 12).

Also on August 13, 2024, Plaintiff was found guilty by Lieutenant Walker and Sergeant Jones of unspecified charges resulting from the staff assault incident. (Doc. 1, p. 6). Plaintiff states that this finding was arbitrary and was not supported by any evidence. He further claims that Walker and Jones did not consider his claims of sexual remarks made by a correctional officer towards him, his mental health status as seriously mentally ill (SMI), and past abuse he has experienced. Walker and Jones recommended that he be sentenced to one year in segregation "amongst other things." (*Id.*).

On August 22, 2024, Nurse Jane Doe came to Plaintiff's cell and asked him why he had

missed his appointment at sick call. (Doc. 1, p. 11). Plaintiff responded that no one had told him that he had a pass for sick call and that Correctional Officer Baker did not come to let him out of his cell. Plaintiff had requested to be seen at sick call because he was still suffering from his injuries. Nurse Jane Doe told Plaintiff that she would see Plaintiff during sick call on Friday. Plaintiff, however, was never called for this appointment. (*Id.*).

On September 20, 2024, Plaintiff had an appointment for a second set of x-rays at an outside facility in Carbondale, Illinois. (Doc. 1, p. 12). Also on September 20, 2024, Plaintiff was given medication for his glaucoma and 200 mg of Ibuprofen. The Ibuprofen was ineffective at treating his pain. (*Id.*).

Plaintiff states that beginning on August 8, 2024, he submitted requests several times a week complaining about his pain and difficulty breathing and seeking medical treatment. (Doc. 1, p. 12). He also filed grievances seeking medical care. (*Id.* at p. 12).

### PRELIMINARY DISMISSALS

The Court dismisses any claim Plaintiff is intending to bring against "C/O John Doe," listed on the docket as John Doe 1. Plaintiff references a few John Doe correctional officers in the Complaint, and the Court cannot determine which individual Plaintiff is intending to sue and for what conduct. Accordingly, John Doe 1 and the claims against him or her are dismissed without prejudice.

The Court also dismisses Plaintiff's claims under the First Amendment regarding the grievance process. Plaintiff asserts that Defendants denied his right to free speech, right to file grievances, and right to access the courts by failing to answer his grievances regarding his housing conditions. (Doc. 1, p. 13). These allegations do not state a claim for a constitutional violation. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause" of the Fourteenth Amendment.

*Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir.2011) (citations omitted). The Constitution requires

no procedure at all, and the failure of state prison officials to follow their own procedures does

not, standing alone, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir.1992);

*Shango v. Jurich*, 681 F.2d 1091, 1100–01 (7th Cir.1982). Additionally, in the last year Plaintiff

has filed four federal cases, including this one, and two appeals[1] indicating that Defendants have

"not infringed his First Amendment right to petition the government for a redress of grievances."

*Brewer v. Ray*, 181 F. App'x 563, 565 (7th Cir. 2006) (quoting *Antonelli v. Sheahan*, 81 F. 3d

1422, 1430 (7th Cir. 1996)).

Finally, the Court dismisses Plaintiff's claim that Defendants violated his rights under the

Fourteenth Amendment Equal Protection Clause as conclusory and improperly pled. (Doc. 1, p.

13). *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (conclusory legal statements are not

sufficient to state a claim).

## DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the

following counts:

| | |
|---|---|
| **Count 1:** | First Amendment claim against Defendants for retaliating against Plaintiff for reporting a PREA staff assault. |
| **Count 2:** | Fourteenth Amendment claim against Walker and Jones for punishing Plaintiff without due process of law. |
| **Count 3:** | Eighth Amendment claim against John Doe 3, Holtgrefe, Hancock, Jones, Baker, Teas, and Young for subjecting Plaintiff to unconstitutional conditions of confinement while he was housed in cell 247. |
| **Count 4:** | Eighth Amendment claim against Morgan, Jane Doe, John Doe 2, Baker, and Wills for failing to provide adequate medical care for Plaintiff's injuries sustained on August 6, 2024, and associated pain. |

---

[1] *Roberston v. Wills,* No. 24-07090 (N.D. Ill. Aug. 12, 2024); *Roberston v. Snell,* No. 24-cv-03318 (C.D. Ill. Nov. 7, 2024); *Robertson v. Wills,* No. 24-2507 (7th Cir. Oct. 7, 2024); *Robertson v. Wills,* No. 24-3127 (7th Cir. Nov. 21, 2024); *Roberston v. Wills,* No. 25-cv-00249-SPM (S.D. Ill. Feb. 25, 2025).

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

### Count 1

To succeed on a First Amendment retaliation claim, Plaintiff must show "that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting Massey v. Johnson, 457 F.3d 711, 716 (7th Cir. 2006)).

Here, Plaintiff claims that he was retaliated against by Defendants at Menard for "reporting PREA staff assault situation at Western." (Doc. 1, p. 5, 6). The facts as alleged, however, give no indication that staff at Menard were aware of any complaints Plaintiff had previously filed at Western regarding sexual abuse by a correctional officer or that they were motivated by the filing of a PREA report. Rather, according to the Complaint and exhibits, Defendants' alleged mistreatment of Plaintiff was due to Plaintiff's involvement in the staff assault at Western. (*Id.* at p. 10, 21, 28). Involvement in a physical altercation with a member of staff is not protected by the First Amendment. *See Hawkins v. Mitchell,* 756 F. 3d 983, 996 (7th Cir. 2014). Accordingly, Count 1 is dismissed without prejudice.

### Count 2

To establish a due process claim related to disciplinary proceedings, an inmate must

---

[2] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

demonstrate: (1) the deprivation of a liberty interest; and (2) the procedures he was afforded were constitutionally deficient. *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019).

Because Plaintiff claims that he was sentenced to segregation in harsh conditions for a year, the Court finds that he has pled the deprivation of a liberty interest. He has also sufficiently pled that he was afforded constitutionally deficient procedures prior to being punished with segregation. In a situation where an inmate complains of discipline such as segregation, or anything other than the loss of good-time credit, the disciplinary proceedings are subject to an informal due process inquiry. Informal due process requires that an inmate is provided (1) notice of the reasons for his placement in segregation, and (2) an opportunity to present his views in a written statement or hearing. *Ealy v. Watson*, 109 F.4th 958, 965 (7th Cir. 2024). Informal due process also requires an impartial decisionmaker. *See Westerfer v. Neal*, 682 F. 3d 679, 686 (7th Cir. 2012).

Plaintiff's allegations allow the plausible inference that Jones and Walker were not impartial when conducting the disciplinary hearing. Plaintiff states that the finding of guilty was arbitrary, and he was later informed that Jones "had it bad" for him. (Doc. 1, p. 8). Plaintiff also claims that staff, including Walker and Jones, had animus towards him because of the staff assault. Accordingly, Count 2 will proceed against Jones and Walker.

## Count 3

The Eighth Amendment prohibits the States from subjecting prisoners to conditions of confinement amounting to cruel and unusual punishment." *Giles v. Godinez,* 914 F. 3d 1040, 1051 (7th Cir. 2019). To prevail on an Eighth Amendment claim based on constitutionally inadequate prison conditions, the plaintiff must show that (1) the conditions in the prison were objectively sufficiently serious " – *i.e.*, that they deny the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety," *Id.,* and (2) prison officials

acted with deliberate indifference to those conditions. *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008) (internal citations and quotation marks omitted).

"[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981). Thus, the conditions experienced by an inmate must be severe to support an Eighth Amendment claim." *Perkins v. English,* No. 22-cv-1053-DRL-MGG, 2023 WL 2571717, at *1 (N.D. Ind. Mar. 20, 2023). "Some conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so." *Gillis v. Litscher,* 468 F.3d 488, 493 (7th Cir. 2006). However, "[g]enerally speaking, challenges to conditions of confinement cannot be aggregated and considered in combination unless they have a mutually enforcing effect that produces the deprivation of a single, identifiable need such as food, warmth, or exercise." *Johnson v. Prentice*, 29 4 895, 904 (7th Cir. 2022). As to the second element of an Eighth Amendment claim, in order to sufficiently plead that a defendant acted with deliberate indifference, the plaintiff must allege facts to support the inference that "the official must have actually known of and consciously disregarded a substantial risk of harm." *Rasho v. Jeffreys*, 22 F. 4th 703, 710 (7th Cir. 2022).

Plaintiff asserts that while in cell 247 his living conditions were unsanitary – the cell was infested with bugs, his mattresses were dirty, the toilet would malfunction and cause flooding, the walls were covered with mold and mace, and the cell smelled of urine and feces. Additionally, he was not provided clean clothes. Plaintiff alleges that John Doe 3 and Sergeant Jones had him intentionally placed in these poor conditions. Furthermore, he subsequently spoke to Defendants Jones, Holtgrefe, Hancock, Baker, Teas, and Young about his dirty cell and mattress, but they failed to take any kind of corrective action. These allegations are sufficient for Count 3 to proceed against Defendants John Doe 3, Jones, Holtgrefe, Hancock, Baker, Teas, and Young for subjecting

Plaintiff to unsanitary living conditions during his time in cell 247. [3]

Plaintiff's other allegations regarding his conditions of confinement while in segregation are dismissed without prejudice. Plaintiff claims that while he was in segregation he was not given recreation time outside in the yard, repeatedly he was only allowed to shower once a week, and he was not allowed to shave. (Doc. 1, p. 10). Plaintiff claims that these practices were in violation of provisions of Illinois Administrative Code.

First, standing alone, the violation of an IDOC policy cannot form the bases of a constitutional claim. *See Sobitan v. Glud*, 589 F.3d 379, 389 (7th Cir. 2009). Second, "restricting inmates to weekly showers does not violate the Eighth Amendment." *Conner v. Home*, 768 F. App'x 560, 563-64 (7 Cir. 2019) (citing *Jaros v. Ill. Dep't of Corrs.*, 684 F.3d 667, 671 (7th Cir. 2012)). Third, Plaintiff has not articulated how there was an excessive risk to his health by not being able to shave or have access to the yard. *See Wadsworth v. Hyatte,* No. 22-CV-417-JD-MGG, 2022 WL 2817754, at *2 (N.D. Ind. 2022). And fourth, these allegations are not asserted against any of the named Defendants. Accordingly, Plaintiff's claims regarding denial of yard time, shower frequency, and the prohibition on shaving are dismissed without prejudice.

### Count 4

To state a claim for deliberate indifference, an inmate must put forward facts implicating both an "objective and subjective element, namely that: (1) an objectively serious medical need was deprived; and (2) the official knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it." *See Chapman v. Keltner*, 241 F.3d 842, 845 (citing *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999)). Deliberate indifference is a high bar. "Neither negligence nor even gross negligence is sufficient basis for liability; rather, liability

---

[3] The Court notes that it is not clear from the Complaint whether Plaintiff spent his entire time in segregation in cell 247.

attaches only if the conduct is intentional or criminally reckless." *Id.* (citing *Salazar v. City of Chi.,* 940 F. 2d 233, 238 (7th Cir. 1991)). Furthermore, when determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs, courts should consider the totality of the received medical care. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000).

On August 6, 2024, Plaintiff was examined by Nurse Morgan, and she did not treat his injuries or provide pain medication. (Doc. 1, p. 6-7). On August 8, 2024, he began writing requests seeking medical treatment several times a week, and he handed emergency requests directly to Nurse Morgan throughout the month of August. (*Id.* at p. 12). Nurse Morgan, however, failed to act to provide or ensure that he was provided care and relief for his pain. The Court finds these allegations sufficient for Count 4 to proceed against Nurse Morgan.

As to Nurse Jane Doe and Correctional Officer Baker, Plaintiff claims that Baker intentionally failed to retrieve Plaintiff for his sick call appointment on August 22, 2024, causing Plaintiff to miss his sick call appointment with Nurse Jane Doe. (Doc. 1, p. 11). Nurse Jane Doe subsequently failed to reschedule him for another sick call appointment. (*Id.*). These allegations are not sufficient for the Court to plausibly infer that Baker and Nurse Jane Doe acted with deliberate indifference. Rather, the conduct described is more akin to negligence, at most to gross negligence, which does not violate the constitution. Count 4 is dismissed as to Baker and Nurse Jane Doe.

Count 4 is also dismissed against John Doe 2, the doctor who treated Plaintiff on September 13, 2024. Plaintiff alleges that during this visit, John Doe 2 evaluated him and sent him to a nearby facility for x-rays, and the x-rays yielded "negative" results. (Doc. 1, p. 11). Following this appointment, Plaintiff does not allege any further interaction with John Doe 2. While Plaintiff claims that he continued to experience pain following his September 13, 2024 appointment with John Doe 2, and eventually had another x-ray on September 20, 2024, there are no allegations that

John Doe 2 knew and ignored Plaintiff's serious medical needs. Accordingly, Plaintiff has failed to allege facts from which the Court can plausibly infer the John Doe 2 acted with deliberate indifference.

Count 4 is dismissed as to Warden Wills. It appears that Plaintiff is attempting to assert liability on Wills because of his position as chief administrative officer. Plaintiff writes, "Plaintiff written several –inmate grievances; chief administrative officer Warden Anthony Wills—" (Doc. 1, p. 12). Mere receipt of grievances from a prisoner is insufficient to establish that a prison warden was personally involved in any deficient medical care provided to the prisoner. *See Owens*, 635 F.3d at 953 ("[T]he alleged mishandling of Owens's grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *see also George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); *Neely v. Randle*, 2013 WL 3321451, at *3 (N.D. Ill. June 29, 2013) ("If there is 'no personal involvement by the warden [in an inmate's medical care] outside the grievance process,' that is insufficient to state a claim against the warden." (quoting *Gevas v. Mitchell*, 492 F. App'x 654, 660 (7th Cir. 2012))).

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a motion asking the Court to recruit counsel on his behalf. (Doc. 3). Pursuant to 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." When faced with a motion for recruitment of counsel the Court applies a two part test: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote,* 503 F.3d 647, 654 (7th Cir. 2007).

Plaintiff discloses three unsuccessful efforts to contact attorneys via written correspondence and has included copies of declination letters from the law firms. Accordingly, he

appears to have made reasonable efforts to retain counsel on his own. With respect to his ability to pursue this action pro se, Plaintiff argues that he is unable to represent himself because he is functionally illiterate and has only a first or second grade reading level. He states that another inmate has drafted each filing in this case. Plaintiff fears that the inmate assisting him could be reassigned to a different location at any time, and then he would have no one to help him. Plaintiff also expresses concerns with conducting merits discovery and legal research and presenting his case at trial. He asserts that his ability to represent himself is hindered by the fact that he has a history of psychological issues, is taking medication, and has no litigation experience.

Despite all these obstacles, the Court finds that Plaintiff is capable of representing himself at this early stage in the case. Although he has difficulty reading and writing, at this time, he has the assistance of other inmates, who have successfully helped him in drafting a complaint that survives preliminary review. Furthermore, the Court finds his assertion that he has "no litigation experience" not entirely accurate. (Doc. 3, p. 3). Records available in the Public Access to Court Electronic Records (PACER) system show that he has filed thirteen cases in this Circuit since 2007 – nine civil rights cases; three habeas corpus petitions; and one writ of mandamus. Plaintiff has litigated in federal court, and this case is not yet at a level of complexity that requires assistance. Once discovery has commenced, if Plaintiff has significant difficulty, he may refile his motion. For now, Plaintiff's motion for recruitment of counsel is **DENIED**. (Doc. 3).

### DISPOSITION

For the reasons set forth above, the Complaint survives preliminary review pursuant to Section 1915A. All claims intended to be brought against John Doe 1 (correctional officer) are **DISMISSED without prejudice. COUNT 1** is **DISMISSED without prejudice. COUNT 2** will proceed against Walker and Jones. **COUNT 3** will proceed in part against John Doe 3 (lieutenant), Holtgrefe, Hancock, Jones, Baker, Teas, and Young. **COUNT 4** will proceed

against Morgan and is **DISMISSED without prejudice** as to Jane Doe, John Doe 2 (doctor), Baker, and Wills. Because there are no surviving claims against John Doe 1 (correctional officer), Jane Doe, John Doe 2 (doctor), and Wills, the Clerk is **DIRECTED** to terminate them as defendants on the docket.

The Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Defendants Walker, Jones, John Doe 3 (once identified), Holtgrefe, Hancock, Baker, Teas, Young, and Morgan the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this**

**Merit Review Order.**

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and (if applicable) his or her attorney were deemed to have entered into a stipulation that any unpaid costs taxed against the applicant shall be paid from any recovery secured in this action.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   September 9, 2025**

_s/Stephen P. McGlynn_____
**STEPHEN P. MCGLYNN**
**United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.